**ALEXANDER, Plaintiff,**

v.

**CITY OF SOUTH BEND, et al., Defendants.**

No. 3:02–CV–0397 CAN.

United States District Court, N.D. Indiana, South Bend Division.

May 18, 2004.

Roseann P Ivanovich, Merrillville, IN, for Richard Lee Alexander, Plaintiff.

Ann–Carol Nash, South Bend, IN, John E Broden, City of South Bend, Department of Law, South Bend, IN, for City of South Bend, South Bend Police Department, Cpt Darryl Gunn, Wayne Boocher, Michael Chritchlow, Cindy Eastman, Eugene Eyster, Larry Hostetler, Donald Miller, Doug Radican, Anne M Schellinger, Frank Scheu, Bonnie Werntz, John Doe, individually and as a police officer for the City of South Bend, Richard Roe, individually and as a police officer for the City of South Bend, Defendants.

**MEMORANDUM AND ORDER**

NUECHTERLEIN, United States Magistrate Judge.

### I. INTRODUCTION

This case presents the question of whether an innocent man, wrongfully convicted and imprisoned for assault and rape, may proceed to trial in his lawsuit against the City of South Bend, its police department, police chief, and ten present and former police officers. This Court concludes that he may not proceed further.

The Plaintiff has alleged that his constitutional rights were violated by the City of South Bend and certain police officers in the manner in which the police department conducted its criminal investigation of the assaults and rapes for which he was wrongfully convicted. Specifically, the Plaintiff alleges that the manner in which the police officers conducted its photo arrays, witness interviews, investigative line-

ups, and other investigative procedures was constitutionally defective. The Plaintiff also alleges that the police department failed to adequately train its officers and that the Defendants conspired to wrongfully convict the Plaintiff because he is an African American.

Each Defendant has filed a motion for summary judgment, arguing that there is no dispute as to any material facts and that each Defendant is entitled to a judgment as a matter of law. For reasons more fully explained below, this Court concludes that the Plaintiff has failed to establish any evidence upon which a reasonable jury could conclude that any Defendant violated his constitutional rights. As a result, and following longstanding legal precedent, this Court now grants summary judgment for each Defendant.

## II. FACTUAL BACKGROUND

Beginning in early 1996, the City of South Bend's River Park neighborhood was terrorized by a series of sexual assaults. After extensive investigation, the police department began to focus its suspicions on the Plaintiff, and in August 1996, the Plaintiff was charged with two counts of robbery, one count of attempted robbery, two counts of criminal confinement, one count of rape, two counts of attempted rape, two counts of criminal deviate conduct, one count of burglary, and one count of auto theft. (Pla. Comp. at ¶ 141). Upon further investigation, the state dropped one attempted robbery and both counts of criminal confinement as well as one of Plaintiff's rape charges on April 22, 1997. Plaintiff's case initially went to trial on June 9, 1997. The jury, however, was unable to return a verdict, and the Plaintiff

was tried for a second time on February 9, 1998. The jury in the second trial was able to reach a verdict, and convicted the Plaintiff of several offenses, including the charged counts of rape. On March 3, 1998, Plaintiff was sentenced to a term of imprisonment for seventy years.

To the credit of the police department and the benefit of the Plaintiff, the police department's investigation into the sexual assaults did not end with the Plaintiff's conviction and imprisonment. Rather, police officers continued their investigation and, with newly available DNA evidence, determined that the Plaintiff had not committed the crimes of which he was convicted. Armed with the new evidence exonerating Plaintiff, on December 11, 2001, the St. Joseph County prosecutor and the Office of the Public Defender filed a joint motion to vacate Plaintiff's conviction, and obtained Plaintiff's release.

## III. PROCEDURAL BACKGROUND

The procedural history of this case is long and complex, unnecessarily so, and requires explanation. Following his release, Plaintiff initiated the present action on June 4, 2002. Plaintiff's ten-count complaint, alleging violations of federal and state law, named twelve current and former South Bend police officers, Darryl Gunn, the former chief of the South Bend Police Department, the South Bend Police Department, and the City of South Bend as Defendants.[1] Plaintiff's complaint was poorly drafted, overly broad, and unnecessarily complex.

On July 20, 2002, the Defendants filed a motion to dismiss. At the hearing on Defendants' motion, Plaintiff's counsel con-

---

1. Individual officers were named in their individual and official capacities. The individual officers were as follows: Wayne Boocher, Michael Chritchlow, Cindy Eastman, Eugene Eyster, Toni Graham, Larry Hostetler, Donald

Miller, Doug Radican, Anne M Schellinder, Frank Scheu, Phil Trent, Bonnie Werntz, John Doe, and Richard Roe. Defendants John Doe and Richard Roe represent unnamed Defendants.

ceded that four of Plaintiff's ten claims were barred by applicable statutes of limitation. On October 15, 2002, Plaintiff amended his complaint, adding a *Monell* theory of liability towards the City, the police department, and Defendant Gunn.[2]

On April 4, 2003, this Court dismissed all claims brought under Indiana law as untimely, dismissed Plaintiff's claims for suggestive lineups, impermissible witness interviews, and coercive testimony without prejudice, and denied Defendants' motion in all other regards. The order permitted Plaintiff to refile the counts dismissed without prejudice if Plaintiff could establish that those claims were viable under 42 U.S.C. § 1983.

Plaintiff filed his second amended complaint on May 5, 2003. The complaint retained all original defendants, alleging four claims under 42 U.S.C. § 1983, and one claim under 42 U.S.C. §§ 1985 and 1986. Like Plaintiff's first amended complaint, Plaintiff's second amended complaint was poorly written, convoluted, and confusing, often alleging that all the named Defendants are responsible for various acts without specifying exactly which Defendant did what. Most notably, Plaintiff's complaint provides separate prayers for relief for each count which name all the Defendants, even those Defendants not involved in particular actions. For example, the prayer for relief in Count VII charges all the Defendants with a failure to train or supervise despite the fact that the majority

of the Defendants had no training or supervisory duties. (Pla. Comp. at 41).

On May 12, 2003, Plaintiff voluntarily dismissed Defendants Toni Graham and Phil Trent, leaving ten individual defendants, the City, the Police Department, Darryl Gunn, and Plaintiff's two fictitious defendants, Jane Doe and Richard Roe. Defendant Gunn was sued in both his individual and professional capacities as well as his capacity as chief of police.

On November 3, 2003, Defendants filed eleven separate motions for summary judgment, each motion pertaining to one or two individual Defendants with a single motion pertaining to the City and the Police Department. Defendants' motions seek summary judgment on all claims.

Plaintiff originally responded to Defendants' motions on December 3, 2003. This Court struck Plaintiff's filings on January 15, 2004, because they exceeded the page limitations set by N.D. L.R. 7.1(d). Plaintiff again filed his responses to Defendants' motions on February 17, 2004.[3] On March 2, 2004, Defendants filed a motion to strike specific exhibits attached to Plaintiff's responses. Upon review of the parties' filings, this Court ordered further briefing on issues concerning the viability of Plaintiff's claims under 42 U.S.C. § 1983 as well as the preclusive effect of Plaintiff's criminal trials on this case. The motions are now ripe for ruling.

---

**2.** Plaintiff's amended complaint added language consistent with *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) covering Defendants Gunn, the City, and the Police Department. These Defendants were named defendants in Plaintiff's original complaint. The amended complaint simply added the "policy or practice" language required by *Monell* to establish municipal liability under 42 U.S.C. § 1983.

**3.** Plaintiff's responses, as submitted on both December 3, 2003, and on February 17, 2004, are titled as "motions" in opposition to Defendants' motions for summary judgment. In litigating a motion for summary judgment, parties must file a motion, a response, and a reply. *See e.g.* N.D. L.R. 56.1(a). Plaintiff's "motions" do not seek summary ruling in his favor, but simply respond to Defendants' motions for summary judgment. This Court shall therefore construe Plaintiff's filings as responses rather than separate motions for summary judgment.

## IV. APPLICABLE LAW

### A. *Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir.2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir.1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000); *See also* N.D. Ind. L.R. 56.1(b) ("In determining a motion for summary judgment, this Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted...as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file."). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *Bank of Ariz. v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### B. *42 U.S.C. § 1983*

Plaintiff's complaint was brought under 42 U.S.C. § 1983. In order to sustain a § 1983 claim, a plaintiff must establish that the alleged violations were committed by a state actor under "color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). There is no dispute that the Defendants acted under color of state law in this matter.

### C. *Defendants' Motion to Strike*

Defendants' March 2, 2004, motion to strike moves to strike over forty exhibits from Plaintiff's responses. Defendants allege that the exhibits are "either hearsay, were not properly made part of the record before the Court, are not supported by [a]ffidavit as required by [Fed.R.Civ.P.] 56...and have not been properly authenticated to be made part of the record." (Dft. Mot. at ¶ 1).

■ In granting summary judgment, this Court may consider any evidence that would be admissible at trial. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir.2002). The evidence need not be admissible in form, but it must be admissible in content. *Id.* Defendants fail to cite adequate guiding authority in support of their motion. Defendant's accusations, however, are based on well-settled legal principles. *See e.g. Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir.1985) (stating that legal argument in an affidavit may be disregarded as conclusory). This order will individually address instances where it is necessary to rely on

portions of Plaintiff's supporting material subject to Defendants' motion. All other objections which are not specifically addressed in this order, and hence not relied upon, are denied as moot.

## V. Defendants' Motions for Summary Judgment

Five of Plaintiff's original ten counts remain in this case. Counts I and IV address Defendants' conduct in conducting photo arrays, witness interviews, and investigative lineups. Count V alleges that Defendants destroyed evidence pertinent to his criminal trial. Count VII alleges that Defendants are liable for their failure to train or supervise employees, and Count VIII alleges that Defendants conspired against Plaintiff as an African American.

As previously stated, Plaintiff's claims allege liability against the Defendant officers in their individual and official capacities as well as liability against the City and the Police Department on all counts. Because Plaintiff's claims against the Defendant officers center on similar issues, this Court shall address each issue collectively, referring to individual Defendants as necessary. The Court's ruling on these issues shall include Plaintiff's claims against the fictitious Defendants, Jane Doe and Richard Roe, as well. Likewise, because Plaintiff's claims against the Defendant officers in their individual capacity, Defendant Gunn in his capacity as South Bend police chief, the City of South Bend, and the South Bend Police Department apply identical legal principles, Defendants' arguments on these issues shall be addressed collectively in Section V.B.

A. *Plaintiff's Claims Against Defendants in their Individual Capacities*

1. *Preliminary Issues: Viability of Plaintiff's Claims Concerning Victim and Witness Interviews, Fabricating Evidence, the Improper Display of Photo Arrays, and Suggestive Lineups* [Counts I and IV]

In its April 4, 2003, order dismissing the majority of Plaintiff's claims, this Court expressed doubts as to whether Plaintiff's claims concerning Defendants' investigative lineup were cognizable under Section 1983. In particular, this Court discussed the Seventh Circuit case of *Hensley v. Carey,* 818 F.2d 646 (7th Cir.1987), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987). Both parties briefly addressed *Hensley* in their summary judgment filings concerning Plaintiff's lineup. In order to develop the matter with regard to other issues, however, this Court ordered further briefing on the applicability of *Hensley* to Plaintiff's lineup, witness interview, photo array, and destruction of evidence claims, as well as additional briefing on the preclusive effect of Plaintiff's criminal trials to this case. The parties complied with this Court's order on April 16, 2004; and, upon review of the parties' submissions, this Court finds that Plaintiff cannot sustain a cause of action under Counts I and IV of his complaint.[4]

a) *Factual Allegations*

Plaintiff's claims covering victim and witness interviews, fabricating evidence, and the improper display of photo arrays are found in Count I of Plaintiff's complaint. Count IV addresses Plaintiff's

---

4. Neither party submitted legal authority directly addressing *Hensley's* applicability to Count V of Plaintiff's complaint, the destruction of evidence, and this Court is unable to locate any binding precedent. Count V of Plaintiff's complaint is therefore addressed separately in Section V.A.2.a.

claims concerning the Defendants' lineup procedures.

### i. *Victim and Witness Interviews, Fabricating Evidence, and the Improper Display of Photo Arrays* [Count I]

Count I of Plaintiff's complaint centers on the methods employed by the Defendant officers in obtaining an identification of the Plaintiff from various witnesses and victims to the River Park rapes. In particular, Plaintiff alleges that Defendants Eastman, Schellinger, Werntz and "other officers" showed rape victims photo arrays that included a photo of Plaintiff despite the victim's prior statements that they had not seen the rapist's face. (Pla. Comp. at ¶ 209–10). Plaintiff also alleges that individual Defendants displayed photo arrays of suspects including the Plaintiff to victims and witnesses on multiple occasions, several of which did not result in a positive identification of Plaintiff as the attacker. *Id.* at ¶ 212–13. The individuals to whom photos were shown testified at Plaintiff's trial. *Id.* at ¶ 215.

Concerning the Defendants' interview techniques, Plaintiff alleges that Defendants Scheu, Radican, Eastman, Schellinger, and "other officers" eliminated the availability of exculpatory evidence by interviewing victims "in front of other individuals and in places where they would be less likely to be forthcoming with all of the facts." *Id.* at ¶ 211. While listed in its heading, Count I includes no separate allegations that the Defendants fabricated any evidence, and only uses the term in paragraph 216. Assumably, the term is to be incorporated into Plaintiff's general complaint concerning Defendants' interview techniques.

### ii. *Suggestive Lineups* [Count IV]

In Count IV, Plaintiff's complaint presents multiple allegations concerning Plaintiff's lineup. First, Plaintiff alleges that he was "not fully informed as to the purpose of the lineup . . . [which] led him to proceed without counsel." (Pla. Comp. at ¶ 223). Second, Plaintiff asserts that the Defendants "told some of the victims that a suspect had been picked up and would be present in the line-up." *Id.* at ¶ 224. Third, Plaintiff contends that his rights were violated by Defendants presenting the lineup to nine witnesses and victims simultaneously. *Id.* at ¶ 225. Fourth, Plaintiff asserts that he was conspicuously dressed in cut-off sleeves, while the other participants "of varying looks, ages, and backgrounds were not." *Id.* at ¶ 226–27. Fifth, Plaintiff alleges that Defendants' requiring the participants to speak during the lineup while they were simultaneously viewed by the victims was unconstitutional. *Id.* at ¶ 228. And Sixth, Plaintiff alleges that Defendants encouraged the lineup witnesses to identify Plaintiff as the perpetrator. *Id.* at ¶ 229.

### b) *Viability of Plaintiff's Claims under Section 1983*

### i. *Application of Hensley v. Carey to Counts I and IV of Plaintiff's Complaint*

Preceding *Hensley v. Carey*, the Supreme Court held that the determination of whether the admission of an unnecessarily suggestive lineup at trial violates a defendant's due process rights depends upon the totality of the circumstances surrounding the lineup. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Court's decision in *Stovall* was expanded in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), in which the Court described its holding in *Stovall* "as protecting an evidentiary interest," *Id.* at 113, 97 S.Ct. 2243, and stated that "a suggestive preindictment identification procedure does not in itself intrude upon a constitu-

tionally protected interest." *Id.* at 113, n. 13, 97 S.Ct. 2243.[5]

The Seventh Circuit addressed the application of this doctrine to a Section 1983 action concerning a suggestive lineup in *Hensley.* In *Hensley,* the court determined that Supreme Court precedent did "not establish a right to an impartial lineup as long as the evidence gained through that lineup is not used at trial." *Hensley v. Carey,* 818 F.2d at 650. The court, however, did not limit its discussion of the lineup's Section 1983 applicability to whether a plaintiff had been tried. Contemplating the basis of a Section 1983 claim, the court stated that

> the rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983. *Id.* at 649.

The court's decision in *Hensley* was further developed by the Sixth Circuit in *Hutsell v. Sayre,* 5 F.3d 996 (6th Cir.1993). In *Hutsell,* the Sixth Circuit held that,

even though a Section 1983 plaintiff had been tried, his claim that a defective photographic lineup caused him to be "unreasonably seized without probable cause and deprived of his liberty without due process...," *Id.* at 1005, did not rise to the level of a Section 1983 violation because it solely concerned the lineup itself, not the plaintiff's trial. The Court reasoned:

> ....As in *Hensley,* plaintiff is not challenging a violation of the core right to a fair trial, but merely the purported violation of a prophylactic rule which resulted in the deprivation of his liberty. Nor has he alleged any extraordinary circumstances which would give rise to a constitutional violation.[6] Having failed to state a claim for an alleged violation of a known constitutional right, our inquiry is at an end. *Id.*

Other courts have followed suit with the reasoning in *Hensley* as well. *See e.g. Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir.1968) (finding that the failure to give *Miranda* warnings is not cognizable under Section 1983); *Duncan v. Nelson,* 466 F.2d 939, 943 (7th Cir.1972) (finding that a plaintiff's involuntarily induced confession did not create Section 1983 liability for an improper conviction.).[7]

---

**5.** *See also United States ex rel. Kirby v. Sturges,* 510 F.2d 397, 406 (7th Cir.1975) ("[I]f a constitutional violation results from a showup, it occurs in the courtroom, not in the police station."); *Christman v. Hanrahan,* 500 F.2d 65, 67 (7th Cir.1974) (Stevens, J.) (rejecting the suggestion that "the Due Process Clause...[provides] broad generalized protection against misdeeds by the police or prosecution....[T]he mission of the clause...[is] avoidance of an unfair trial to the accused, and no violation...[results] unless the misconduct had some prejudicial impact on the defense.").

**6.** The "extraordinary circumstances" to which the court referred must be extreme. *See e.g. Hensley,* 818 F.2d at 650 n. 4 ("Historically, courts have recognized that this use of force to extract an involuntary confession is actionable under § 1983 while a mere technical failure to follow court established rules of

criminal procedure is not cognizable under § 1983."); *Sejnoha v. Bisbee,* 815 F.Supp. 1300, 1304 n. 2 (D.Ariz.1993)(internal quotations omitted)("Police misconduct that shocks the conscience has included unlawfully breaking into and entering defendant's room, unlawfully assaulting, battering, torturing and falsely imprisoning the defendant....").

**7.** *See also Haupt v. Dillard,* 794 F.Supp. 1480, 1489–90 (D.Nev.1992) (concerning improper photo arrays where a plaintiff had been tried) ("absent extraordinary circumstances.. even if this Court were to find that the identifications...were unduly suggestive, [the plaintiff] could not maintain a claim under § 1983."); *Pace v. City of Des Moines,* 201 F.3d 1050, 1055 (8th Cir.2000); *Sejnoha v. City of Bisbee,* 815 F.Supp. 1300, 1302–03 (D.Ariz.1993); *Mack v. Butler,* 742 F.Supp. 1007 (N.D.Ill. 1990); *Willis v. Bell,* 687 F.Supp. 380

Plaintiff cites three cases in opposition to *Hensley* and its progeny, none of which directly address the *Hensley* decision. Plaintiff first cites *King v. Goldsmith*, 897 F.2d 885 (7th Cir.1990), a brief opinion dealing with Section 1983's applicability to a case in which defendant police officers purposefully withheld exculpatory information, altered a transcript, and suborned perjury to obtain the plaintiff's criminal conviction. The decision in *King*, however, did not address the applicability of pretrial investigatory procedures to a subsequent 1983 suit, but singly addressed whether a criminal conviction precludes a subsequent suit charging law enforcement officers with false imprisonment or malicious prosecution. *Id.* at 886. Such is not the issue in Plaintiff's case.

Plaintiff also cites *Smith v. Springer*, 859 F.2d 31 (7th Cir.1988). *Springer* was a prior appeal of *Smith v. City of Chicago*. In *Springer*, the plaintiff, following his release from prison, filed a Section 1983 suit against two arresting officers for the alleged fabrication of laboratory evidence. The district court dismissed the plaintiff's claims, holding that they were an improper collateral attack on the plaintiff's state court conviction. The Seventh Circuit reversed, distinguishing the plaintiff's suit from a *habeas* action, finding that the plaintiff was seeking monetary damages rather than the invalidation of his conviction. *Id.* at 33.

Again, *Springer* fails to address the viability of investigatory procedures under Section 1983. Even more detrimental to Plaintiff's argument, however, is the court's statement that Section 1983 cases require the deprivation a constitutional "right." As held by the Supreme Court and the Seventh Circuit, a suggestive preindictment identification procedure does not, in itself, intrude upon a constitutionally protected interest. It is because Plaintiff challenges Defendants' preindictment procedures alone, and not the outcome of Plaintiff's trial, that Plaintiff's claims under Counts I and IV fail to present a cognizable claim under Section 1983.

Plaintiff also cites *Smith v. City of Chicago*, 913 F.2d 469 (7th Cir.1990). However, like *King*, *Smith* does not deal with the viability of a claim concerning pretrial investigatory procedures under Section 1983, and warrants no discussion.

■■ Like the plaintiff in *Hutsell*, Plaintiff was tried, twice in fact, and the identifications gained from the photo arrays as well as the lineup were used at trial. Also like *Hutsell*, Plaintiff's claims focus only on prophylactic evidentiary rights, not the right to a fair trial. Only once in his complaint, paragraph 209, does Plaintiff use the term "fair trial." That paragraph, however, solely pertains to Defendants' display of a photographic lineup, not Plaintiff's trial itself.[8] Aside from this single instance, nowhere in Counts I or IV of Plaintiff's second amended complaint or in Plaintiff's supplementary material does Plaintiff indicate that Defendants' alleged investigatory malfeasance directly precluded Plaintiff's right to a fair trial.

In his complaint, Plaintiff alleges that he was deprived of his "rights, privileges and immunities secured to him under the Constitution of the laws of the United States."[9] Plaintiff's counsel's drafting in-

---

(N.D.Ill.1988); *Gonzalez v. Tilmer*, 775 F.Supp. 256 (N.D.Ill.1991).

**8.** Paragraph 209 reads: "Defendants Eastman, Schellinger, Werntz, and other officers willfully, maliciously, and recklessly showed photos repeatedly to victims, Eck, Holdridge, and Jensen, who had previously indicated that they had never seen their attackers faces, in violation of a clearly constitutional right resulting in deprivation of due process, and depriving Alexander of his right to a fair trial and deprivation of Alexander's liberty."

**9.** *See* (Pla. Comp. at ¶ 221) (concerning photo arrays and witness interviews) ("As a proxi-

hibits a ready determination of this matter. Undoubtedly, the right to a fair trial can be found within Plaintiff's overarching statements. Counts I and IV, however focus on the alleged deprivations of prophylactic rights, not Plaintiff's trial. In Counts I and IV, the only link between the investigation devices employed by the Defendants and Plaintiff's trials is that victims and witnesses who saw the photos, were interviewed, and saw the lineup, actually testified. *See* (Pla. Comp. at ¶ 215, 230). The complaint says nothing about the trials becoming inhibited by these procedures, and Plaintiff has produced no evidence of such an occurrence. Conversely, Plaintiff's criminal defense counsel was allowed to cross examine every victim and witness who made an identification at the lineup or a photo array, *see e.g.* (Trial Trans. at 604–08, 839–41, 947–49, 952–60, 967, 983–85), further precluding the influence of any investigatory violation on the trial.

This Court further notes that there is no evidence, aside for Plaintiff's accusations, that any extraordinary circumstances warrant deviation from the *Hensley* principle. No witnesses were coerced into testifying; and, while Defendants' identification proce-

dures may not have been ideal, they were not constitutionally inadequate.

This Court need not and will not imply a cause of action to Plaintiff's complaint where none exists. *See e.g. Whitfield v. Sternes,* 66 Fed.Appx. 40, 43 (7th Cir.2003) (regarding *habeas* petitions)(*citing Chambers v. McCaughtry,* 264 F.3d 732, 739 (7th Cir.2001); *Moleterno v. Nelson,* 114 F.3d 629, 635 (7th Cir.1997)) ("scattered references to 'due process' and 'right to a fair trial' without any supporting constitutional analysis are insufficient.…[a party] must do more than 'phrase-drop' constitutional terms; he must go 'beyond the due process label to a more meaningful level of specificity' "). Because Counts I and IV do no more than challenge prophylactic investigatory procedures, this Court holds that Plaintiff's claims are not cognizable under Section 1983.

ii. *Preclusion of Issues by Plaintiff's Criminal Trials*

In addition to the viability of Plaintiff's claims under *Hensley,* the parties' April 16, 2004, memoranda also briefed this Court on the preclusive effect of Plaintiff's criminal trials on the present case.[10] The law of preclusion "is intended to protect

mate result of the foregoing malicious, reckless, intentional and fraudulent conduct of one or more of the Defendants, Alexander was deprived of rights, privileges and immunities secured to him under the Constitution of the laws of the United States including his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments"); *Id.* at ¶ 235 (concerning Plaintiff's lineup) ("As a proximate result of the aforementioned malicious, reckless, intentional and fraudulent conduct of one or more of the Defendants, Alexander was deprived of rights, privileges and immunities secured to him under the Constitution of the laws of the United States and was otherwise injured all in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.").

**10.** This Court initially notes that Defendants did not raise preclusion as an affirmative defense in their answer to Plaintiff's second amended complaint. While such a deficit would normally preclude use of this defense, *see* Fed.R.Civ.P. 8(c), "courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even when a party fails to do so." *Kratville v. Runyon,* 90 F.3d 195, 198 (7th Cir.1996); *see also Studio Art Theatre v. City of Evansville,* 76 F.3d 128, 130 (7th Cir.1996) ("The benefits of precluding relitigation of issues finally decided run not only to the litigants, but also to the judicial system."). In its March 17, 2004, order, this Court sought briefing on preclusion from both parties, limiting any harm to Plaintiff by Defendants' failure to raise the issue in its pleadings.

the parties from the burden of relitigating the same issue following a final judgment and to promote judicial economy by preventing needless litigation." *Mauler v. Bayfield County,* 204 F.Supp.2d 1168, 1173–1174 (W.D.Wis.2001) (*citing Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

■ In applying the principles of preclusion, this Court must afford full faith and credit to both criminal and civil state court decisions. 28 U.S.C. § 1738; *Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *see also Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 83–86, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (finding that both issue and claim preclusion apply to Section 1983 litigation). The preclusive effect of state decisions is governed by the law of the state in which the original action was decided. *Wabash Valley Power Ass'n v. Rural Electrification Admin.,* 988 F.2d 1480, 1487 (7th Cir.1993). Thus, in deciding whether Plaintiff is precluded from litigating the propriety of his photo array and lineup claims in federal court, this Court must determine whether Indiana law would give Plaintiff's criminal trials preclusive effect against Plaintiff's present claims as well as whether Plaintiff had a full and fair opportunity to litigate his claims in state court. *Allen,* 449 U.S. at 104, 101 S.Ct. 411. A party receives a full and fair opportunity to litigate a claim, so long as "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause" have been satisfied. *Guenther v. Holmgreen,* 738 F.2d 879, 885 (7th Cir.1984); *see also Willard v. Pearson,* 823 F.2d 1141, 1149 (7th Cir.1987) (holding that Indiana criminal courts afford litigants a full and fair opportunity to litigate Fourth Amendment claims).

■ Indiana recognizes two forms of preclusion: claim preclusion, or *res judicata,* and issue preclusion, or collateral estoppel. Claim preclusion requires: "(1) a judgment from a court of competent jurisdiction, (2) on the merits, (3) in a suit between the same parties, in which (4) the matter at issue was, or might have been, determined in the former suit." *Hensley v. Jasper Police Dep't,* 163 F.Supp.2d 1006, 1021 (S.D.Ind.2001) (applying Indiana law). Issue preclusion, while similar, bars the relitigation of "a particular issue, which was adjudicated in [a] prior action." *Id.* at 1022. Hence, "for issue preclusion to apply...the issue in the subsequent case must have been 'actually litigated and determined.'" *Id.* at 1022. Mutuality of estoppel and identity of parties is not required for the defensive use of collateral estoppel. *Sullivan v. American Casualty Co.,* 605 N.E.2d 134, 139 (Ind.1992). In Indiana, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Sullivan,* 605 N.E.2d at 138; *Comm'r, Ind. Dep't of Envtl. Mgmt. v. Bourbon Mini–Mart, Inc.,* 741 N.E.2d 361, 368–369 (Ind.Ct.App.2000).

■ Significantly, Plaintiff never attempted to exclude evidence gained from Defendants' interviews, photo arrays, or lineups at either of his criminal trials (Dft. Supp. Brief at 6). Defendants argue that Plaintiff's ability to assert these issues at his criminal trials now precludes this Court's determination of Plaintiff's claims. *Id.* at 6–7 (*citing Migra,* 465 U.S. at 83, 104 S.Ct. 892). Defendants' reasoning is sound. *See e.g. Kimberlin v. DeLong,* 637 N.E.2d 121, 125 (Ind.1994). Plaintiff did not move to exclude evidence of Defendants' investigatory techniques at either of his criminal trials, although he had the ability to do so. Plaintiff's trial counsel was able to cross examine all witnesses

subject to the arrays, interviews, and line-up; and, as Plaintiff admits, Defendants' identification procedures were even addressed on appeal (Pla. Supp. Brief at 7). This Court therefore finds that the Plaintiff had a full and fair opportunity to litigate the issues concerning Counts I and IV of his complaint at his criminal trials.

This Court further finds that Plaintiff's opportunity to litigate these issues was not otherwise unfair. The use of estoppel will be considered unfair under Indiana law:

(a) where the defendant had little incentive to vigorously litigate the first action either because the damages were small or nominal, or because future suits were not foreseeable;

(b) where the judgment relied upon for estoppel is inconsistent with one or more previous judgments in which the defendant was successful; or

(c) where the procedural opportunities are available to the defendant in the later action which were unavailable to him in the previous action and which would likely affect the result. *Doe v. Tobias*, 715 N.E.2d 829, 832 (Ind.1999).

In the present case, Plaintiff had ample incentive to litigate all matters in his criminal trials, *See* Id. at 832 (finding that a criminal defendant's incentive to litigate is "presumably true in most criminal convictions"), and had ample opportunity to conduct discovery and to litigate these issues. *Id.* ("In an Indiana criminal prosecution the defendant has the full range of discovery."). The second consideration fails to apply to Plaintiff's case.

Plaintiff attempts to contest the application of Indiana's preclusion principles by arguing that, because Plaintiff never litigated his claims concerning witness interviews or the alleged fabrication of evidence

at trial or on appeal, he should be able to litigate these issues in federal court. This is not the case. As the Supreme Court held in *Migra*, both issue and claim preclusion apply to Section 1983 actions. Hence, so long as Plaintiff had a full and fair opportunity to litigate these issues at his criminal trials, he cannot attempt to relitigate those issues here. As reasoned above, Plaintiff had ample opportunity to raise these issues before the Indiana court during his trial and chose not to do so. This Court will not now afford Plaintiff another opportunity to litigate these claims. If these issues did not merit argument when the facts were fresh and the Plaintiff's liberty was at stake, they do not merit argument now when the facts are stale and the Plaintiff seeks financial compensation. This Court concludes that Plaintiff is precluded from litigating all issues found within Counts I and IV of Plaintiff's second amended complaint under Section 1983. Defendants' motion for summary judgment on these counts is therefore granted.[11]

### 2. *Liability of Individual Defendants Under Counts V, VII, and VIII*

Plaintiff's remaining claims cannot be dismissed under *Hensley* or Indiana's law of preclusion because they were not available to Plaintiff during his criminal trials and do not involve pretrial investigatory procedures. This Court shall therefore address Counts V, VII, and VIII under Section 1983.

#### a) *Destruction of Evidence* [Count V]

Count V of Plaintiff's complaint alleges that Defendants Eastman, Schellinger, and "other unknown police officers," (Pla.

---

11. The parties also addressed the application of Indiana's law of preclusion to Count V of Plaintiff's complaint concerning the destruction of evidence. Because the state prosecutor dismissed all charges related to this claim, this Court finds that Plaintiff had no opportunity to litigate the issue. *See also, infra* Section V.A.2.a (addressing Count V).

Comp. at ¶ 238), destroyed exculpatory evidence that implicated another suspect in the River Park rapes prior to Plaintiff's trial. Plaintiff's claim concerns Defendants Eastman and Schellinger's destruction of excess DNA evidence left over from a sexual assault victim's rape kit received from the Indiana State Police Crime Lab.[12]

During Defendants' investigation, several rape kits were returned to Defendants Eastman and Schellinger following examination by state lab technicians. According to Defendant Schellinger, she and Eastman were told by a lab technician that the kits were no longer needed and could be destroyed. (Schellinger Dep. at 65).[13] At the time the kits were returned to Eastman and Schellinger, the lab had already completed its analysis of samples taken from the Plaintiff and attempted to compare them with samples taken from three victims. Only the samples taken from one victim, however, contained semen specimens which could be analyzed for DNA, and that comparison showed no link between Plaintiff and her. The prosecuting attorney thus dismissed all charges against Plaintiff stemming from the attack on this victim.

### i. Liability of Defendants Eastman and Schellinger

 Defendants do not contest the fact that Eastman and Schellinger destroyed the rape kits at issue, but argue that Plaintiff cannot maintain his claim for the simple fact that Plaintiff was not harmed by Defendants' actions. Defendants are correct in their assertion. Liability under Section 1983 requires proof that the con-

duct at issue "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Put succinctly, "[s]ection 1983 is a tort statute....[and a] tort to be actionable requires injury." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3rd Cir.2000); *see also Smith v. Yarrow*, 78 Fed.Appx. 529, 540 (6th Cir.2003) (same).

Such is the case here, where Plaintiff was not injured by Eastman and Schellinger's disposal of the rape kits. Prior to delivering the rape kits to Eastman and Schellinger, the lab results were recorded by the lab, allowing the lab to perform future tests on the data without the need for the kit itself. (Black Dep. at 48–52) (stating that the lab kept records of findings from rape kits for at least ten years, allowing it to compare future suspects to the evidence despite the actual kits' destruction). More importantly, upon receiving the negative results, the state dropped the charges against him, further indicating that Plaintiff was not harmed. Plaintiff presents no evidence indicating that he was harmed by the destruction of the rape kits in any way. Because Plaintiff was not harmed by Defendants' actions, Defendants' motion on this issue is granted.

### ii. Liability of Remaining Individual Defendants

 As previously stated, Plaintiff's counsel's poor drafting skills have hindered the determination of this case. An example of this problem is again demon-

---

**12.** Contents of a rape kit typically include head and pubic hair combings, vaginal wash, vaginal cervical smear slides, cervical swabs, and rectal or oral swabs and smears. (Black Dep. at 43).

**13.** Some discrepancies exist as to whether Defendants Eastman and Schellinger were

told to dispose of the rape kits. As noted by Defendants, the decision to dispose of a rape kit was normally made by the prosecuting agency, not the lab. (Scamahorn Dep. at 45–46); *See also* (Black Dep. at 47) (stating that Schellinger's assertion that a lab technician told her to destroy a rape kit was unlikely).

strated by counsel's inclusion of the names of all individual Defendants in Plaintiff's prayer for relief following Count V despite the fact that only Defendants Eastman and Schellinger are connected to the destruction of the rape kits. "For a defendant to be liable under 1983, he or she must have participated directly in the constitutional violation. 'Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir.2003) (*citing Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996)). Thus, summary judgment must be granted in favor of the remaining Defendants for two reasons. First and foremost, because the remaining Defendants had no involvement in the destruction of the kits; and secondly, because Plaintiff was not harmed by the kits' destruction. Defendants' motions with regard to this issue is therefore granted.[14]

b) *Failure to Train or Supervise* [Count VII]

■ The same reasoning applies to this Court's determination of Plaintiff's claim against all individual Defendants concerning Count VII of Plaintiff's complaint. As with Count V, Plaintiff's prayer for relief in Count VII includes the names of all Defendants. Nowhere in the complaint or in the voluminous array or supporting material provided by Plaintiff, however, does Plaintiff establish that the individual Defendants had any responsibility to train or supervise other officers with regard to adequate witness interview, lineup procedures or basic investigative techniques. As with the other counts of Plaintiff's complaint, Count VII is muddled with factual assertions concerning how individual Defendants conducted interview and lineup procedures. Despite these assertions, Count VII does not specifically charge any individual Defendant with the responsibility to train or supervise other employees, *see* (Pla. Comp. at p. 38–41), nor is any evidence presented in Plaintiff's submissions charging individual Defendants' with training responsibilities. With no individualized responsibility, Plaintiff's claim against the individual Defendants must fail. *See Hildebrandt*, 347 F.3d at 1039.[15]

■ Perhaps the only individual on whom individual supervisory responsibility could rest is Defendant Gunn. In his case, supervisory liability can only be found where a supervisor, with knowledge of a subordinate's conduct, approves of the conduct and the basis for it. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (*citing Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997)).

14. Neither Defendants nor Plaintiff devoted substantial argument to the liability of the remaining Defendants with regard to the rape kits' disposal. Defendants' motions, however, moved for summary judgment on all issues in the case. This, combined with the fact that Plaintiff cannot succeed on his destruction of evidence claim because he was not harmed, warrants summary ruling in Defendants' favor.

15. This Court does acknowledge paragraph 259 of Plaintiff's complaint which states:

A custom was developed whereby officers taught one another how to stop and detain individuals, present photo arrays, to conduct lineups, and to dispose of evidence in a manner that violates the constitutional rights of Alexander and others. (Pla. Comp. at ¶ 259)

Plaintiff's statements in this paragraph do not implicate individual Defendants, but merely attempt to evidence a custom or policy of which the municipal Defendants should have been aware. As reasoned in Section V.B.5, *infra*, Plaintiff is unable to establish that such a policy existed.

That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable .... The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference. *Id.* (internal quotations and citations omitted)

▪ Although Defendant Gunn served as police chief at the time Defendants investigated Plaintiff, Plaintiff has presented no evidence establishing that Gunn knew of any prior constitutional violations by the Defendant officers, or that he was personally involved in the alleged constitutional wrongs committed during the investigation. While this Court notes that Defendant Gunn was admittedly aware of individual Defendants' actions concerning Plaintiff, the fact that Gunn was aware of the progress in the River Park investigation does not establish that he was either aware or should have been aware of any unconstitutional actions to which he acquiesced or was deliberately indifferent.[16] This Court thus finds that Plaintiff has set forth no evidence on which a reasonable juror could find that the individual Defendants, including Defendant Gunn, are subject to liability for the failure to train or supervise. Defendants' motion on this issue is therefore granted.

c) *Conspiracy against Plaintiff as an African American* [Count VIII]

Count VIII of Plaintiff's complaint alleges that Defendants "maliciously conspired for the purpose of depriving, either direct-

ly or indirectly, Alexander, an African–American, of equal protection of the law, and of equal privileges and immunities under the laws, in violation of the 14th Amendment." (Pla. Comp. at ¶ 266). Read in its entirety, Count VIII attempts to link several instances during Defendants' investigation of Plaintiff with a race-based conspiracy to deprive Plaintiff of his rights in violation of 42 U.S.C. §§ 1985 and 1986.

▪ A claim for conspiracy under 28 U.S.C. § 1985(3) requires: (1) the existence of a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir.2000). In addition, Section 1985(3) requires "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Brokaw*, 235 F.3d at 1024. Claims under Section 1986 derive from claims under Section 1985. Section 1986 imparts liability on those who know of a Section 1985 conspiracy and do nothing to prevent it, despite their power to do so. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir.1984).

▪ Plaintiff's conspiracy claim fails for several reasons. First and foremost, Plaintiff has presented no evidence that Defendants' investigation of Plaintiff was premised on a racial animus shared among the Defendants. Plaintiff's complaint alleges that Defendants stopped, in-

---

**16.** *See e.g.* (Gunn Dep. at 28) (acknowledging that Gunn knew that Plaintiff would be subjected to a lineup); *Id.* at 35 (stating that Gunn removed Defendants Eastman and

Schellinger from the sex crimes unit upon learning that they had disposed of the rape kits).

terrogated, and detained Plaintiff because he was an AfricanAmerican. (Pla. Comp. at ¶ 267, 269). Plaintiff's statement is technically correct. Defendants did, in fact, investigate Plaintiff because of his racial status. They did so, however, not because they were motivated by any racial animus, but because each victim and witness to the River Park rapes reported that the perpetrator was an African American. A racially-motivated charge of conspiracy cannot be maintained where a plaintiff is unable to present non-legitimate reasons for a defendant's actions. *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003) (*citing Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 482 (7th Cir. 1995)) (granting summary judgment where a plaintiff was unable to rebut a defendant's assertions that its actions were based on "legitimate factors."). Aside from presenting the undisputed fact that Plaintiff is an African American, Plaintiff offers no evidence that Defendants investigation stemmed from any racial animosity, evidence necessary to sustain his claim.

 Secondly, Plaintiff is unable to establish evidence of an actual conspiracy to deprive Plaintiff of his rights. A civil conspiracy requires an agreement between two or more persons acting in concert to inflict an injury upon another. *Copeland v. Northwestern Mem. Hosp.,* 964 F.Supp. 1225, 1234 (N.D.Ill.1997); *see also Amundsen v. Chicago Park Dist.,* 218 F.3d 712, 718 (7th Cir.2000) (requiring civil conspiracy allegations to "be supported by some factual allegations suggesting a meeting of the minds."). Plaintiff attempts to establish such a meeting by referencing phone calls between individual Defendants. *See e.g.* (Schellinger Dep. at 23)(stating that

she was contacted at her home after Plaintiff was stopped); (Pla. Resp. to Radican Mot. at 18) (alleging that Defendant Schellinger contacted Defendant Eastman regarding Plaintiff's case). Such contacts do not establish the creation of a conspiracy, but merely indicate that the Defendants were actively pursuing a suspect and sought to communicate with one another about their efforts. *See Goetzke v. Ferro Corp.,* 280 F.3d 766, 778 (7th Cir.2002) (finding that the existence of numerous phone calls between alleged conspirators, "standing alone, merely proves that [the individuals] remained in contact.... To assert that the calls are evidence of a conspiracy is simply speculation.").

Plaintiff also attempts to bootstrap a conspiracy argument by alleging that Defendants' investigation of Plaintiff was insufficient. *See e.g.* (Schellinger Dep. at 29) (stating that she knew of no surveillance undertaken with regard to Plaintiff); (Hostetler Dep. at 19–20) (same); (Hostetler Dep. at 53–55)(stating that Defendants did not seriously investigate all rape suspects); (Radican Dep. at 59–60) (stating that Plaintiff was not interrogated). While Plaintiff's citations to the record may intimate that Defendants could have been more thorough in their investigation, they do not establish that Defendants conspired against Plaintiff. "Although a conspiracy certainly may be established by circumstantial evidence...such evidence cannot be speculative." *Williams,* 342 F.3d at 785. Plaintiff's evidence is speculative at best, attempting to lure this Court into believing that Defendants' investigative actions manifested a conscious decision to investigate and prosecute Defendant in derivation of his constitutional rights.[17]

---

**17.** Plaintiff also attempts to secure a conspiracy claim based on his accusations concerning improper lineups, photo arrays, witness interviews, and the destruction of evidence. As reasoned above, Plaintiff's Section 1983 claims with regard to these allegations fail on

multiple grounds. Accordingly, Plaintiff's allegations cannot support a conspiracy claim. *See Indianapolis Minority Contractor's Ass'n v. Wiley,* 187 F.3d 743, 754 (7th Cir.1999)

This Court will not take such an evidentiary leap of faith, nor can it imagine any rational trier of fact reaching such a conclusion. *See Green v. Benden*, 281 F.3d 661, 665–666 (7th Cir.2002) (holding that, while a conspiratorial agreement "may be inferred from circumstantial evidence," such an inference may occur "only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."). Such an inference cannot be made in this case. Plaintiff's references to the Defendants' investigation efforts simply do not demonstrate that a meeting of the minds occurred among the Defendants to deprive Plaintiff of his civil rights because of his membership in a racial group. Defendants' motions for summary judgment on Plaintiff's Section 1985 and 1986 claims are therefore granted. *Grimes v. Smith*, 776 F.2d 1359, 1363 n. 4 (7th Cir. 1985) (Section 1986 claims fail where Section 1985 claims cannot be established).

B. *Plaintiff's Claims Against Defendant Officers in Their Official Capacities, Defendant Gunn, the City of South Bend, and the South Bend Police Department*

 As previously stated, Plaintiff's allegations contain claims against Defendant Gunn, in his capacity as chief of police, the City, and the Police Department, as well as claims against each individual police officer in his or her official capacity. Municipal employers and supervisors cannot be subjected to a Section 1983 claim under a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gable v. City of Chicago*, 296 F.3d 531,

(absence of an underlying violation precludes success of a Section 1985 claim).

537–38 (7th Cir.2002). To maintain suit against a municipality under Section 1983, a plaintiff must establish a "policy or custom" attributable to municipal policymakers. *Monell*, 436 U.S. at 691–94, 98 S.Ct. 2018. An unconstitutional policy or custom may be established in three ways: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Palmer v. Marion County*, 327 F.3d 588, 594–595 (7th Cir.2003).

With regard to Plaintiff's claims against individual Defendants in their official capacities, such claims, in essence, are claims against the Defendants' employer rather than claims against the individual Defendants. *Luck v. Rovenstine*, 168 F.3d 323, 325 (7th Cir.1999). Such cases are therefore treated as claims against Defendants' employer under the standards set forth in *Monell*. *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir.1998)). Accordingly, this Court shall apply the *Monell* liability standard to Plaintiff's claims against the named Defendants in their official capacities as well as Defendants Gunn, the City, and the Police Department.[18]

1. *Failure of Plaintiff's Claims Against Individual Defendants Warrants Summary Ruling on Issues of Municipal Liability*

 As reasoned previously, this Court grants summary judgment in favor of the

18. The municipal Defendants as well as the individual Defendants sued in their official capacities shall be collectively referred to as "municipal Defendants."

individual Defendants on all issues. Under Section 1983, "a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim." *Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir.2003) (*citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Because this Court has ruled against Plaintiff on Plaintiff's underlying claims, it must necessarily rule against Plaintiff on the issue of municipal liability for these claims as well. Notwithstanding this fact, this Court shall also address Plaintiff's municipal claims on their merits.

2. *Victim and Witness Interviews, Fabricating Evidence, and the Improper Display of Photo Arrays* [Count I]

As reasoned above, Plaintiff's claims covering victim and witness interviews, fabricating evidence, and the improper display of photo arrays concerning the individual Defendants fail because they are not cognizable under Section 1983. Concerning the municipal Defendants, Plaintiff does not allege the existence of an official rule or standard authorizing impermissible witness interviews or photo arrays, nor does Plaintiff allege that the alleged constitutional injury was caused by a person with final policy-making authority. Rather, Plaintiff asserts that the municipal Defendants had "an unwritten policy that authorized and encouraged the inappropriate photo arrays and improper interviewing" of victims and witnesses. (Pla. Resp. to the City's Motion at 6). In making this allegation, however, Plaintiff fails to point to any instances outside of Mr. Alexander's particular investigation where South Bend police officers engaged in improper photo arrays or witness interview procedures violative of the due process clause.

 In order for Plaintiff to establish a municipal policy so permanent and well settled as to constitute a "custom or usage" with the force of law, he must point to instances demonstrating a long-standing and widespread practice of constitutional deprivation either acquiesced to or noticed by municipal policy makers. *See e.g. Roach v. City of Evansville,* 111 F.3d 544, 549 (7th Cir.1997) (finding that no reasonable jury could infer that a municipal defendant was engaged in a permanent and well-settled practice of depriving residents of their constitutional rights based on isolated incidents occurring in the same case within a very short span of time); *Robles v. City of Fort Wayne,* 113 F.3d 732, 737 (7th Cir.1997) (finding that a plaintiff had failed to produce the substantial evidence necessary to establish the "widespread practice" necessary for municipal liability); *Harris v. City of Marion,* 79 F.3d 56, 59 (7th Cir.1996) ("One incident cannot be bootstrapped into a pattern."). In light of this standard, Defendants argue that Plaintiff has failed to present sufficient evidence to establish a widespread custom or practice sufficient to establish *Monell* liability. Defendants are correct in their assertion.

Plaintiff attempts to rebuff Defendants' assertion by referring to the lack of training Defendant officers received concerning photo arrays and witness interview techniques as well as attacking the constitutional adequacy of Defendants' activities in Plaintiff's case. Both of Plaintiff's arguments are unpersuasive. Plaintiff's claims concerning training are applicable to Count VII of Plaintiff's complaint, not towards a custom of conducting unconstitutional interviews. More importantly, however, Plaintiff's references to Defendants' witness interview techniques, display of photos, and other investigatory practices in Plaintiff's case provide no evidence of widespread constitutional deprivations outside of Plaintiff's case. Because Plaintiff presents no evidence of a custom or prac-

tice of unconstitutional photo arrays and witness interview techniques by the municipal Defendants, Defendants' motion concerning these issues is granted.

### 3. *Suggestive Lineups* [Count IV]

Plaintiff's claims of municipal liability for suggestive lineups fail for similar reasons. Again, Plaintiff does not allege that there existed an official rule or standard authorizing suggestive lineups, nor does Plaintiff allege that his injury was caused by a person with final policy-making authority. As with his photo array claim, Plaintiff contends that "there was a long-standing practice in place where lineups were not conducted with the degree of seriousness that should be given to such a substantial step or event in an investigation." (Pla. Resp. to the City's Motion at 13). In support of his contention, Plaintiff cites to the depositions of Defendants Hostetler, Eyster, and Radican, which reference the Police Department's general lineup practices. *See* (Hostetler Dep. at 23–24) (stating that lineup participants could often see their identifiers in contrast to officers' assurances to the contrary); (Eyster Dep. at 40) (stating that lineup participants were not dressed in identical clothes); (Radican Dep. at 30–31) (same).[19]

Accepting Plaintiff's evidence as true, while this Court acknowledges that the lineups conducted by the South Bend Police Department may not have been perfect, Plaintiff has presented no evidence that the police department's lineup practices were constitutionally impermissible. *See e.g. Gregory–Bey v. Hanks,* 332 F.3d 1036, 1040–1041 (7th Cir.2003) (finding it problematic to a lineup's efficacy where witnesses believed that the defendant could see them);[20] *United States v. Funches,* 84 F.3d 249, 253 (7th Cir.1996) (lineup was not unreasonably suggestive, despite the fact that the defendant was 3–5 inches shorter and 20–45 pounds lighter than the other participants); *United States ex rel. Crist v. Lane,* 745 F.2d 476, 479 (7th Cir.1984) ( "The police are not required to conduct a search for identical twins in age, height, weight or facial features."). Again, even assuming that Plaintiff's assertions are true, the evidence presented does not establish a longstanding custom of conducting improper lineups.[21] Accordingly, the municipal Defendants cannot be held liable under Section 1983.

### 4. *Destruction of Evidence* [Count V]

Count V of Plaintiff's complaint alleges that the municipal Defendants "established unconstitutional city policy in allowing its officers to recklessly withhold evidence and destroy exculpatory DNA evidence that was irreplaceable, or at a mini-

---

19. Plaintiff also goes into great detail with regard to Plaintiff's own lineup. As with Plaintiff's claims under Count I, Plaintiff's references to his individual lineup cannot establish a policy or practice of constitutional deprivations necessary for municipal liability.

20. Unlike the lineup at issue in *Gregory–Bey,* the witnesses referenced by Defendant Hostetler believed that they could not be seen. Such evidence cuts against Plaintiff's argument that the lineups were flawed.

21. Attempting to establish a longstanding practice of improper lineup procedures, Plaintiff suggests several alternatives to im-

prove Defendants' lineup practices. *See e.g.* (Pla. Resp. to City's Mot. at 14) (concerning lineup participant's lack of similarity) ("...the City and Police did not care to pay the roughly $20 it most likely would have cost to purchase a couple of three-packs of identical plain t-shirts."). Plaintiff's assertions, based on no law or citations to the record, are meaningless to this Court's analysis. A response to summary judgment is no time to suggest whether a defendant police department could have engaged in better investigative procedures. It is a time to set forth facts on which a reasonable juror could find for one's claim. Plaintiff's hypothetical lineup procedures fail to meet this standard.

mum not reasonably replaceable through Defendant's acceptance of their recklessness as well as failure to make any changes." (Pla. Comp. at ¶ 246). Plaintiff's claims of municipal liability as well as his intimation of recklessness, however, are unsupported by the record. There is no evidence of an official policy to destroy evidence nor is there any indication that a final policy maker ordered Defendants Schellinger and Eastman to destroy the rape kits at issue. Concerning custom, the available evidence points to a practice of preserving, rather than destroying evidence. *See* (Black Dep. at 31–33); (Scamahorn Dep. at 45–46) (stating that the crime lab would not direct a law enforcement agency to dispose of a sexual assault rape kit).

Plaintiff attempts to establish municipal liability from the fact that no policy existed concerning kit disposal (Pla. Resp. to City's Mot. at 16) (indicating that the police Department's duty manual contained no procedure for the disposal of evidence); (Schellinger March 20, 1997, Rpt.) (stating that she had not received formal training concerning the preservation of rape kits).[22] Assuming that Plaintiff's assertions are correct, the lack of training evidenced by Plaintiff's citations still show no custom or policy of improperly destroying evidence. As with Plaintiff's other claims, Plaintiff fails to provide evidence that such a practice had occurred on a regular basis that was or should have been noticed by the municipal Defendants. Rather, Plaintiff points to the incident involving Defendants Schellinger and Eastman—an incident that produced no harm to Plaintiff—and argues that this incident, combined with Defendants' lack of training, created a pattern or practice of constitutional deprivations.

Again, such an inference cannot be made. Even assuming that the municipal Defendants should have had a formal procedure for the disposal of rape kits and other evidence, the lack of such a procedure, absent any evidence of past wrongs, cannot establish a custom of Section 1983 deprivations. Defendants' motion on this issue is therefore granted.

### 5. *Failure to Train or Supervise* [Count VII]

Count VII of Plaintiff's complaint charges the municipal Defendants with a failure to train and supervise its police officers with regard to adequate witness interview, lineup procedures, basic investigative techniques, and the proper disposal of evidence. (Pla. Comp. at ¶ 252, 259). "[L]iability against a municipality may attach if persuasive evidence is presented of a training policy or custom, or lack thereof, which reflects a showing of deliberate indifference on the part of a municipality to the constitutional rights of its inhabitants." *Dunn v. City of Elgin,* 347 F.3d 641, 646 (7th Cir.2003); *Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir.2003) (citing *City of Canton v. Harris,* 489 U.S. 378, 389–92, 109 S.Ct. 1197, 103 L.Ed.2d 412, (1989)). Municipal liability under *Canton,* however, only exists where the "failure is tantamount to 'deliberate indifference' toward the constitutional rights of citizens". *Williams v. Heavener,* 217 F.3d 529, 532 (7th Cir.2000).

To establish the requisite deliberate indifference, Plaintiff must make three showings:

(1) that a policymaker ... know to a moral certainty that ... employees will confront a given situation; (2) that the

---

**22.** Both the South Bend Police Department Duty Manual and Defendants Schellinger's report are subject to Defendants' motion to strike. (Dft. Mot. at 2). Discussion regarding the admissibility of these items is unnecessary, however, in light if this Court's granting summary judgment on this issue.

situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights. *Kitzman–Kelley ex rel. Kitzman–Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir.2000) (internal quotations omitted).

The inadequacy of police training serves as a basis for liability under Section 1983 only if the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police deal. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1297–1298 (7th Cir.1989); *see also Palmquist v. Selvik*, 111 F.3d 1332, 1346 (7th Cir.1997) ("for the § 1983 failure in training to constitute actionable 'policy,' this failure to train must reflect deliberate or conscious choice."). A plaintiff cannot prevail merely by proving that an injury could have been avoided had an officer received enhanced training. *Erwin*, 872 F.2d at 1298. Rather, "before liability can legally attach, the municipality must be on notice of the deficiency, and have a high degree of culpability". *Palmquist*, 111 F.3d at 1346.

> The question then is whether the police training . . . afforded the officers it hired was obviously deficient . . . If so, was this inadequacy so likely to result in a violation of a constitutional magnitude that a jury could reasonably attribute to the municipality's policymakers deliberate indifference to these training needs? *Id.*

Plaintiff does little to establish the requisite notice of past violations necessary to establish a claim for failure to train or supervise. Plaintiff first cites to the fact that Defendant officers receive sixteen hours of self-directed training per year. (Pla. Resp. to City's Mot. at 23) (citing Eastman Dep. at 14, 65). This fact does nothing to establish that the municipal Defendants knew of past or probable future constitutional violations that could be corrected by training. Plaintiff then cites to Defendant Eastman and Schellinger's disposal of rape kits. As reasoned above, the destruction of the kits in Plaintiff's case does not constitute a constitutional violation, and Plaintiff's citation to the disposal of kits, even if it was improper, fails to demonstrate that the municipal Defendants were on notice of any wrongdoing. Plaintiff simply identifies the fact that the South Bend Police Department destroys rape kits rather than keep them indefinitely. He cites no law or standard indicating that such a practice is unconstitutional, nor does he indicate that South Bend police officers routinely destroyed rape kits in a manner inhibiting criminal defendants' rights.[23]

While not addressed by the Plaintiff, this Court's prior analysis of Plaintiff's claims concerning improper lineups, photo arrays, and witness interviews demonstrates that Plaintiff cannot sustain an action for the failure to train on these issues as well. As reasoned above, Plaintiff has presented little to no evidence concerning past instances of improper conduct over these matters sufficient to establish municipal liability. Likewise, this lack of evidence demonstrates that the municipal Defendants were not on notice of any need to increase employee training over these matters. Because Plaintiff has set forth no

---

23. Plaintiff does note that the Defendant officers were not trained to refrain from destroying rape kits. (Pla. Resp. to City Mot. at 24) (citing March 20, 1997 Schellinger report). This reference, like the specific instances themselves, does not indicate any problem of which the municipal Defendants should have been on notice.

evidence on which a reasonable juror could find that the municipal Defendants' training and supervision of its employees amounted to a deprivation of criminal defendants' constitutional rights, Defendants' motion on this issue is granted.

### 6. *Conspiracy Against Plaintiff as an African American* [Count VIII]

As with Plaintiff's conspiracy claims against the individual Defendants, Plaintiff's conspiracy claims against the municipal Defendants are not specific, alleging a general conspiracy to "recklessly engage in racial discrimination." (Pla. Comp. at ¶ 274). Plaintiff alleges that the municipal Defendants maintained "an unwritten policy that authorized, allowed and continues to allow officers to deny individuals their civil rights and discriminate against individuals based on race." (Pla. Resp. to City's Mot. at 18). As with Plaintiff's Section 1983 claims, municipal liability under 42 U.S.C. § 1985 and 1986 requires proof of "an official policy or custom which relates to matters stemming from or resulting in the conspiracy." *Eiland v. Hardesty*, 564 F.Supp. 930, 934 (N.D.Ill. 1982) (regarding a motion to dismiss); *Saniat v. City of Chicago*, 2003 WL 22964373, **2–3, 2003 U.S. Dist. LEXIS 22539, 8–10 (N.D.Ill.2003) (same). Again, Plaintiff provides no evidence on which this Court could intimate the existence of such a conspiracy, much less a policy or practice of conspiring against African Americans.

Plaintiff initially attempts to establish a policy of conspiring against African Americans by listing several civil rights lawsuits brought against the City and its police officers. (Pla. Resp. to City's Mot. at 18–19). Simply listing the cause numbers of fourteen civil rights suits, none of which resulted in a judgment against the City, does not establish a widespread policy or custom of conspiracies against African Americans. Conversely, the fact that Plaintiff cites no judgments adverse to the municipal Defendants indicates a dearth of discriminatory action, not a pattern or practice of conspiratorial discrimination.

Plaintiff also attempts to establish a pattern or practice of conspiratorial conduct by discussing two isolated instances of alleged police misconduct. *Id.* at 19–20. The first instance apparently occurred in 1996 when South Bend police officers used pepper spray against an African American. The second instance simply references a officer's disciplinary proceedings in 2003. Neither of these references include citations to the record, nor do they establish a policy of conspiratorial discrimination.

Lastly, Plaintiff again attempts to bootstrap a municipal liability claim onto his case by citing alleged instances of misconduct from Plaintiff's own criminal investigation. Again, such references do not establish a widespread pattern or practice of discrimination, much less a longstanding conspiracy against African Americans. Because Plaintiff is unable to present any evidence on which a reasonable trier of fact could find a claim of conspiracy, Defendants' motion for summary judgment on this issue is granted.

## VI. CONCLUSION

There can be no doubt that the legal system failed Mr. Alexander. He has suffered what all criminal justice safeguards were designed to prevent: the wrongful conviction and imprisonment of an individual. While wronged, however, the law does not allow Mr. Alexander to place liability on the City of South Bend, its police department, or the several officers who investigated the underlying criminal case. The criminal justice system is not perfect. It states the obvious to say that mistakes have occurred when an individual such as Mr. Alexander is wrongfully imprisoned. But the Plaintiff must establish more than the fact that mistakes were

committed, or that the investigation was inadequate. He must show that the Defendants' conduct was deliberate, that they knew that Mr. Alexander was innocent, and fabricated evidence to wrongfully convict him. This has not been done. Indeed, the facts show just the opposite, for it was the police department and its dedicated police officers that continued the investigation even after Mr. Alexander's conviction and ultimately discovered the evidence that exonerated him. Mr. Alexander has indeed been harmed by his wrongful conviction, but the law does not allow recovery against the City, or its police department and officers.

One final note. From its onset, this case has been hindered by counsel. Beginning with this Court's dismissal of roughly half of Plaintiff's claims, an episode which could have been avoided had Plaintiff's counsel performed a rudimentary investigation of the law pursuant to Fed.R.Civ.P. 11, to the multiple extensions of time, to the eventual conclusion of this matter and a finding that Mr. Alexander has no claims to pursue, this case has lumbered to its conclusion. Both the Plaintiff and the individual Defendant police officers, many of whom assisted in Mr. Alexander's release, have undoubtedly been through an emotional ordeal, which could have been avoided with a proper investigation of the facts and law and adequate research of legal issues. Fortunately for all parties concerned, this case is now at an end.

As provided in this memorandum and order, Plaintiff's claims under Counts I and IV of his second amended complaint are untenable under 42 U.S.C. § 1983. Plaintiff has presented no evidence on which a reasonable trier of fact could find in his favor under Counts V, VII, and VIII of his complaint, and has also failed to establish municipal liability on all counts. For the foregoing reasons, Defendants'

collective motions for summary judgment [Doc. No. 85, 87, 89, 91, 93, 95, 97, 99, 101, 103, and 105] are **GRANTED**; and Defendants' motion to strike [Doc. No. 160] is **DENIED AS MOOT**. Accordingly, the clerk is **DIRECTED** to enter judgment in favor of the Defendants and against Plaintiff.

**SO ORDERED.**