William E. LUCK, Plaintiff–Appellant,

v.

C. Alan ROVENSTINE, Defendant–Appellee.

No. 97–3051.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1998.

Decided Feb. 16, 1999.

---

Christopher C. Myers (argued), Myers & Geisleman, Fort Wayne, IN, for Plaintiff–Appellant.

Robert T. Keen, Jr. (argued), Diana C. Bauer, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Jeffrey A. Modisett, Office of the Attorney General, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

When a law enforcement officer makes a warrantless arrest, the Fourth Amendment entitles the arrestee to a prompt probable cause hearing before a judge or magistrate. *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). According to the Supreme Court, "prompt" in this context means, under most circumstances, within 48 hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In this case, Billy Luck was jailed for more than a week, with no *Gerstein* hearing, after an Indiana state trooper arrested him without a warrant and turned him over to the custody of the Kosciusko County, Indiana, Sheriff, Al Rovenstine. Luck sued both the arresting officer and the sheriff, but only his claim against the sheriff in his personal and official capacities remains. The district court granted summary judgment in the sheriff's favor on both claims. We agree that Luck failed to raise a genuine issue of fact about the sheriff's individual liability to him, but we find that Luck established enough to survive

an adverse summary judgment on his official capacity claim, and we therefore reverse and remand for further proceedings on that count alone.

## I

The account of the facts that follows is, naturally, presented in the light most favorable to Luck, the non-moving party. See, e.g., *Reid v. Norfolk & Western Ry.*, 157 F.3d 1106, 1110 (7th Cir.1998). On December 22, 1993, 18–year–old Billy Luck voluntarily admitted to Indiana State Trooper Thomas Littlefield that he had been involved in some recent thefts. Trooper Littlefield read Luck his rights, told him he was under arrest, handcuffed him, and transported him to the Kosciusko County Jail, where he relinquished custody of Luck to the sheriff's authority. Trooper Littlefield informed the booking officer that he was charging Luck with felony theft. Jail staff processed Luck and placed him in a holding cell, where he remained for four days. After that, Luck was moved to a cellblock in the general population.

On December 28, Luck asked when he would be going to court. Jail personnel said they would check, but they did not provide him with an answer at that time. Instead, the next day, the Kosciusko County Jail Commander informed Sheriff Rovenstine that Luck had been detained for eight days on the basis of a warrantless arrest without being brought before a judge or magistrate for a probable cause hearing. Sheriff Rovenstine immediately contacted the Kosciusko County Prosecutor's Office, which directed Sheriff Rovenstine to release Luck. Luck was released the same day. Ultimately, Luck pleaded guilty to the theft charge and received a sentence of one year's probation.

Luck later brought a lawsuit under 42 U.S.C. § 1983 against Trooper Littlefield and Sheriff Rovenstine in their official and individual capacities, alleging, among other things, an unconstitutional deprivation of liberty without due process of law. He complained that he should have been brought before a judge or magistrate for a probable cause hearing during his detention. Trooper Littlefield settled with Luck, leaving Sheriff Rovenstine as the sole defendant.

At his deposition, Sheriff Rovenstine testified that, although he had been unaware of Luck's specific situation, such a situation was not necessarily unusual for a detainee who had been brought in by an agency other than the Kosciusko County Sheriff's Department, such as the Indiana State Troopers. The Kosciusko County Jail serves as a holding facility for several different law enforcement agencies, and Sheriff Rovenstine followed a policy of tracking detainees differently depending on whether or not an outside agency brings them in. Pursuant to that policy, when one of his own officers arrests a suspect, the sheriff is fully informed about the detainee's status, and on his own initiative he releases the suspect if she is not called for a hearing within the proper time frame. In contrast, if an outside agency incarcerates a suspect in his jail, the sheriff's staff does not monitor the hearing schedule for the suspect. In the latter case, they release a detainee only when directed to do so by a judge or prosecutor. To explain this difference in approach to monitoring and releasing detainees, Sheriff Rovenstine indicated that he did not wish to meddle in the affairs of other agencies and was trying to avoid a "turf war."

## II

We first address Luck's claim that Sheriff Rovenstine may be liable in his official capacity for the violation of Luck's constitutional rights. This is, in essence, a claim against the office of sheriff rather than a claim against Sheriff Rovenstine himself, and we therefore understand the claim to be directed against the county. See *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir.1998).

Municipal liability under § 1983 does not automatically spring from the acts of municipal employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Instead, municipalities are liable only for wrongs that they themselves cause. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), discussing *Monell v. De-*

*partment of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such wrongs may, for example, arise from "official policy," that is to say, "acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 479–80, 106 S.Ct. 1292. It is also well established that legislative action is not needed to create official policy; the act of an ultimate municipal decision-maker suffices. *Id.* at 480, 106 S.Ct. 1292. See also *Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir.1996). Thus, Luck's official capacity claim against Sheriff Rovenstine can survive summary judgment if Luck can show (1) that Sheriff Rovenstine was an official with authority to establish municipal policy, and (2) that there is a genuine issue of material fact whether Sheriff Rovenstine's actions caused the violation of Luck's right to be free from unconstitutional detention.

The district court concluded that Sheriff Rovenstine was not a municipal decision-maker and that the county could be liable only if it expressly ratified Sheriff Rovenstine's decisions. The court was in error in this regard, as the sheriff concedes. Indiana Code § 36–2–13–5(a) provides without further qualification that it is the sheriff's duty to take care of the jail and its prisoners. Thus, the sheriff's actions are not subject to any further scrutiny or ratification by the county, and the sheriff serves as the county's official decision-maker in matters involving the county jail. See also *Armstrong*, 152 F.3d at 577 (addressing an official capacity claim against an Indiana sheriff).

■ Although he acknowledges his status as a county decision-maker and the jail's caretaker, Sheriff Rovenstine contends that he has no duty to ensure that detainees arrested without a warrant receive a probable cause hearing or gain release. Sheriff Rovenstine believes that someone else, perhaps the arresting officer or the prosecutor, is responsible for the period of confinement between a warrantless arrest and a judicial determination of probable cause.

We find unconvincing the sheriff's attempt to shrug off his federal constitutional responsibilities toward detainees confined in the Kosciusko County Jail who have not yet had a probable cause hearing. In the somewhat different context of a claim for a substantive due process violation *after* probable cause has been established in an appropriate way, this court held in *Armstrong* that the sheriff's office could not abdicate its own responsibility for the fate of pretrial detainees. See 152 F.3d at 579. See also *Coleman v. Frantz*, 754 F.2d 719, 723 (7th Cir.1985). In the final analysis, the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody.

■ Sheriff Rovenstine seeks to distinguish this case on the ground that it involves Luck's Fourth Amendment right to be free from unreasonable seizures, rather than a substantive due process right to be free from an unduly long pre-trial detention. See, *e.g.*, *County of Riverside*, 500 U.S. at 56, 111 S.Ct. 1661; *Gerstein*, 420 U.S. at 114, 95 S.Ct. 854; *Sivard v. Pulaski County*, 959 F.2d 662, 666–70 (7th Cir.1992). There is, to be sure, a difference between the constitutional provisions that apply to the period of confinement before and after a probable cause hearing: the Fourth Amendment governs the former and the Due Process Clause the latter. In *Villanova v. Abrams*, 972 F.2d 792 (7th Cir. 1992), this court commented that for general purposes of assessing the benefits of confinement to the government versus the costs to the person confined, the difference in constitutional category probably makes little difference. *Id.* at 797. On the other hand, for purposes of the question we face directly—that is, how tight the limits on confinement must be when a person is being held in the absence of any determination of probable cause—the *Villanova* opinion recognized that the pre-determination standard (that is, the Fourth Amendment standard) must be stricter. The sheriff therefore can take little comfort from the fact that Luck fell within the group of persons who have not yet had a probable cause determination, not the group whose rights are determined directly under the due process clause.

■ In order to prevail, Luck must point to evidence tending to show that his continuing detention without a probable cause hearing resulted from Sheriff Rovenstine's chosen

course of action. Taking the facts most favorably to Luck, as we must, we believe he has met this burden. Sheriff Rovenstine's own deposition testimony supports the conclusion that two different monitoring policies existed: one for detainees his own officers brought in, and another for detainees brought in by outside agencies. Furthermore, since the policy with respect to the latter group of detainees was to delegate responsibility for monitoring to either the courts, the other agency, or the prosecutor, it was in effect the kind of policy of deliberate indifference we criticized in *Armstrong.* 152 F.3d at 579. On the basis of this record, a jury could conclude that Sheriff Rovenstine did not merely overlook Luck, but instead chose to pursue a deliberate course of action that gave greater weight to avoiding conflict with other agencies than it did to the preservation of detainees' constitutional rights. A policy under which the sheriff holds onto a suspect until the arresting agency tells him to release the person is in terms a violation of the Fourth Amendment. Luck's contention that this was Sheriff Rovenstine's policy is therefore sufficient to support an official capacity claim against the sheriff.

Before leaving the official capacity theory, we note that this case differs in two important respects from *Armstrong.* First, unlike the plaintiff in *Armstrong,* Luck is presenting a *Gerstein/Riverside* claim of unconstitutional detention prior to a probable cause hearing. The *Armstrong* court took care to point out that it was not confronted with a *Gerstein* claim. See, *e.g.,* 152 F.3d at 569–70; 571–72. Because the Supreme Court itself has spoken to the question of the time within which the custodian must act to establish basic probable cause, see *Riverside,* it follows that any official policy must meet that standard. Second, in the present case it is far from uncontested that Sheriff Rovenstine had in place the kind of back-up plan relying on formal written complaints that saved the sheriff's system in *Armstrong* from condemnation as deliberately indifferent. See 152 F.3d at 579. Even assuming that such a system would be adequate in the more time-sensitive period before a probable cause hearing—a point we certainly cannot answer in the abstract—on this record summary

judgment for the sheriff cannot be sustained on that basis.

■■■ We turn now to Luck's claim against Sheriff Rovenstine in his individual capacity. Individual capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo, supra,* 502 U.S. at 25, 112 S.Ct. 358. To establish personal liability in a sec.1983 action, the plaintiff must show that the officer "caused the deprivation of a federal right." *Id.* Furthermore, should it come to this, a state actor sued in her individual capacity "may assert personal immunity defenses." *Id.* See *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (discussing the qualified immunity defense).

Luck argues that Sheriff Rovenstine should be individually liable based on the following three points: (1) his knowledge of Luck's incarceration in the jail for seven days, obtained presumably by the fact that the jail roster was available for his review, (2) his policy of ignoring pretrial detainees brought in by outside agencies so that he could avoid a "turf war," and (3) his inaction in handling prolonged incarcerations. Even assuming all those facts were true—that is, that the sheriff had access to the roster, that he had the policy we have just finished discussing in connection with the official capacity claim, and that he was guilty of inaction in Luck's case or generally—the district court correctly concluded that this does not add up to the kind of personal involvement we require for individual liability in sec.1983 cases. See, *e.g., Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995). Luck concedes that he never had any direct contact with the sheriff and that Sheriff Rovenstine lacked "actual knowledge" of Luck's wrongful detention. This alone is enough to defeat his individual capacity claim against the sheriff; we therefore have no occasion to discuss the question whether the sheriff would in any event be entitled to qualified immunity from suit.

For these reasons, we AFFIRM the district court's decision to dismiss the individual claims against Sheriff Rovenstine, and we REVERSE and REMAND for further proceed-

ings on Luck's official capacity claims. The costs of appeal are to be assessed against the Office of the Sheriff.