Richard **LINGENFELTER**, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

**BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, KANSAS; Randy J. Henderson, individually and in his official capacity as Sheriff of Reno County, Kansas, Defendants.**

**No. 04–1244–WEB.**

United States District Court, D. Kansas.

March 14, 2005.

Craig Shultz, Law Office of Craig Shultz, P.A., Kurt P. Kerns, Ariagno, Kerns, Mank & White, Roger M. Theis, Salvatore D. Intagliata, Hinkle Elkouri Law Firm, L.L.C., Wichita, KS, for Plaintiff.

Toby Jon Crouse, Wendell F. Cowan, Jr., Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendants.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

Plaintiff Richard Lingenfelter filed this action under 42 U.S.C. § 1983 claiming the defendants violated his rights under the fourth and fourteenth amendments to the U.S. Constitution. Plaintiff alleges that after he was arrested without a warrant by Reno County Sheriff's officers, the defendants detained him for eight days in the Reno County jail without having a magistrate make a timely determination of probable cause as required by *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).[1] The matter is now before the court on the defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The court finds that oral argument would not assist in deciding the issues presented.

### I. *Rule 12(b)(6) Standard.*

Defendants seek dismissal under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. When a federal court reviews the sufficiency of a complaint before the reception of any evidence, its task is necessarily a limited one. The purpose of a Rule 12(b)(6) motion is to

---

1. Although the complaint was filed by plaintiff individually and on behalf of a class of persons who "within the applicable period of limitations [were] arrested without a warrant and confined in the Reno County Jail without a determination of probable cause by a judge promptly after arrest," Doc. 1 at ¶ 23, the court has yet to determine whether the action is appropriate for class action consideration, and the parties have agreed to a stay of all class certification issues until after the instant motion is resolved. *See* Docs. 9 & 13.

test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer any evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Under the limited review applicable at this stage of the litigation, a complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In making this determination, all well-pleaded facts (as distinguished from conclusory allegations) must be taken as true. *See Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984).

## II. *Factual Allegations.*

A. *Complaint.* The following allegations from the complaint are assumed to be true for purposes of the instant motion. The defendant Board of County Commissioners of Reno County, Kansas, exercises governmental authority in Reno County, including the operation and maintenance of the Reno County Jail. In such capacity, it is responsible for the protection of the constitutional rights of persons arrested and confined within the jail. *Complaint,* ¶ 4. Defendant Randy Henderson is the Sheriff of Reno County. He is the County officer directly responsible for law enforcement in Reno County and for the operation of the Jail. In such capacity, he is responsible for the protection of the constitutional rights of persons arrested and confined within the Jail. He is sued in his individual and official capacities. *Id.,* ¶ 5. The defendants have final authority to determine and set the regulations, procedures and practices for treatment of detainees at the Jail. *Id.,* ¶ 7.

On November 10, 2002, plaintiff was arrested without a warrant by officers of the Reno County Sheriff's Department and was confined in the Reno County Jail under a $100,000 bond. He was told by the arresting officers that he would be charged with attempted kidnaping. The arresting officers completed an unsworn arrest report alleging the commission of such an offense. *Id.,* ¶ 6.

On November 12, 2002, plaintiff was transported from the Jail for an appearance before a judge of the Reno County District Court to set and determine bond. The arresting officers did not then appear, nor did the defendants file any affidavit or other statement under oath alleging the commission of an offense by plaintiff. *Id.,* ¶ 8. In determining bond, the court made inquiry of plaintiff regarding his place of business, family status, financial status, and criminal history. After this inquiry, plaintiff's bond was set at $150,000. *Id.* Due to plaintiff's indigent status, he was unable to post bond and he remained in the custody of the defendants at the Jail.

On November 18, 2002, plaintiff was charged by a complaint filed by the Reno County District Attorney with one count of attempted kidnaping. At that point, plaintiff had been in defendants' custody for 8 days without charges and without a judicial determination of probable cause. *Id.,* ¶ 13.

On November 20, 2002, the court lowered plaintiff's bond to $15,000. Plaintiff was afforded no further appearance before a judicial officer and at no time during his confinement did defendants cause plaintiff to be taken before a judicial officer for a determination of probable cause that he had committed an offense. *Id.,* ¶ 11. Plaintiff remained confined at the Jail until November 20, 2002, when family members were able to post a bond. *Id.,* ¶ 12.

On April 1, 2003, the Reno County District Court dismissed the charges against plaintiff at the conclusion of a preliminary hearing, finding there was insufficient evidence to establish probable cause that plaintiff committed the offense alleged. *Id.,* ¶ 14.

Pursuant to policy, custom, and practice, the defendants do not cause persons arrested without a warrant and who remain in their custody to appear before a neutral judicial officer for a determination of probable cause. *Id.,* ¶ 20.

B. *Arrest Report.* In an attempt to supplement the foregoing allegations from the complaint, the defendants have submitted a copy of an Arrest Report with their Opening Brief and have argued the court can consider the Report without treating the motion as one for summary judgment under Rule 56. They argue this is permissible because the Arrest Report is referenced within and is central to the plaintiff's claim, and because it is a public record of which the court can take judicial notice. The Report includes an affidavit section—apparently executed by the arresting officer—containing statements attributed to the victim of the alleged offense. It was signed by the officer and contained a representation that it was made on information and belief after first being duly sworn on oath. It also contained a space for a notary to attest that the statement was subscribed and sworn to, but this section was blank.

In their Memorandum in Support of the Motion to Dismiss, the defendants initially assumed plaintiff was claiming that a judicial determination of probable cause at the November 12th hearing was defective "because the arresting officer's sworn statement [in the Arrest Report] was not notarized." Doc. 12 at 1. Plaintiff's response to the motion, however, makes clear that plaintiff is claiming no probable cause determination at all took place at the November 12th hearing (or before), and that no one filed any affidavit or other statement under oath at the hearing. Plaintiff argues the court should not consider anything outside of the complaint (including the Arrest Report) in ruling on the Rule 12(b)(6) motion. In response to plaintiff's clarification, defendants say in their Reply Brief that the Arrest Report is now "largely immaterial" to the instant motion, although defendants still maintain the court can properly consider the Report under Rule 12(b)(6).

■■■■ The court concludes the Arrest Report and its contents should not be considered for purposes of the instant motion. Both sides agree the court should not convert this matter to a summary judgment motion. Thus, the motion is premised solely on the pleadings. Although it is true that under Rule 12(b)(6) the court has discretion to consider documents referenced in the complaint which are central to the plaintiff's claims (*see GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997)), or which are public records, the court concludes it would be inappropriate to do so here. The complaint alleges that the defendants did not file any affidavit—which would include the Arrest Report—at the hearing on November 12, 2002. The Report is thus not central to the plaintiff's claim.

III. *Arguments on Motion to Dismiss.*

Defendants argue that plaintiff's allegations fail to show a Fourth Amendment violation. For purposes of the motion defendants assume, as plaintiff claims, that no probable cause determination took place at the November 12, 2002 hearing, but they nevertheless contend they fulfilled their constitutional duty by promptly presenting plaintiff to a judicial officer for a hearing. They note that in *County of Riverside v. McLaughlin,* 500 U.S. 44, 47,

111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Supreme Court held the Fourth Amendment requires a prompt *judicial* determination of probable cause, and they argue if no such determination took place at the November 12th hearing, the responsibility for the failure lies with the District Court Judge and/or the County Attorney, not with the defendants. As for their continued detention of plaintiff beyond the November 12th hearing, defendants argue this was not the result of any policy or conduct on their part, but was due to an order of the District Judge that plaintiff be detained until he met the requirements of bond. Defendants argue their conduct does not violate the Fourth Amendment, noting that plaintiff "has not offered any authority indicating law enforcement personnel violate an arrestee's Fourth Amendment rights by continuing to detain a person pursuant to a facially valid court order." Doc. 20 at 4. Defendants contend the allegations thus fail to state a constitutional deprivation by the Sheriff or any other Reno County officer, and that as a result plaintiff has failed to state a claim against Reno County.

Even if the allegations show a violation of plaintiff's Fourth Amendment rights, defendants argue that Sheriff Henderson is protected by qualified immunity because there was no clearly established law putting him on notice that he should have released plaintiff after the November 12th hearing despite the judge's order that plaintiff be detained until he met bond. In a similar vein, defendants argue they are entitled to "quasi-judicial" immunity because they detained plaintiff pursuant to a facially valid court order.

### IV. *Discussion.*

A. *Elements of § 1983 Claim.* To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he suffered the deprivation of a right secured by the constitution or laws of the United States and that the defendant, acting under color of state law, caused the deprivation. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Where the defendant in question is a municipality (or other local governmental body), the plaintiff must show that a municipal policy or custom was the moving force behind the constitutional deprivation. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

B. *Whether the Complaint States a Fourth Amendment Claim.* The Fourth Amendment provides in part that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, ..." U.S. Const., amend. IV. The requirements of the amendment apply to the States by virtue of the Due Process Clause of the Fourteenth Amendment. *See Baker v. McCollan,* 439 U.S. 1114, 99 S.Ct. 1015, 59 L.Ed.2d 71 (1979).

 In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court observed that the Fourth Amendment's protections against unfounded invasions of liberty had led the Court to require that probable cause to be determined by a neutral and detached magistrate whenever possible "instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* at 112–13, 95 S.Ct. 854. Nevertheless, a judicial determination of probable cause need not always precede an arrest: "[A] policeman's on-the-scene assessment of probable cause provides legal justification ... for a brief period of detention.... Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 113–14, 95 S.Ct. 854.

As a result, when a person is arrested without a warrant, the Fourth Amendment requires a judicial determination of probable cause promptly after the arrest as a prerequisite to any extended pretrial detention. *Id.* at 124–25, 95 S.Ct. 854 ("Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."). The determination of probable cause need not be made in an adversary hearing; traditionally it has been made by a magistrate in a non-adversary proceeding on hearsay and written testimony. *Id.* at 120, 95 S.Ct. 854.

In *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Court addressed *Gerstein's* requirement for a "prompt" determination. According to *County of Riverside*, the probable cause determination need not be made as soon as the administrative steps incident to arrest have been completed (because states should have flexibility to arrange their pretrial procedures as they think best—such as by combining the probable cause determination with an arraignment), but it nevertheless must be made without unreason-

able delay. The Court concluded that a jurisdiction which provides a judicial determination of probable cause within 48 hours of arrest will generally comply with the requirements of the Fourth Amendment.[2] When an individual does not receive a probable cause determination within 48 hours of arrest, the burden shifts to the government to show the existence of a bona fide emergency or other extraordinary circumstances to justify the delay. *Id.* at 57, 111 S.Ct. 1661.

Plaintiff alleges that after his warrantless arrest, he was held in the defendants' custody at the Reno County Jail for eight days without a judicial determination of probable cause, in violation of his rights under the Fourth and Fourteenth Amendments. He further alleges that the defendants are the officials who exercise final decision-making authority over the management of the Jail, and that pursuant to their policy, custom, and practice, the defendants do not cause persons arrested without a warrant to appear before a judge for a probable cause determination, which led to the violation of his rights.[3] If true, such allegations would show that the defendants violated plaintiff's Fourth Amendment right to be free from unreasonable seizures as explained in *Gerstein*

**2.** The Court cautioned, however, that a probable cause determination within 48 hours might still violate *Gerstein* if the hearing was unreasonably delayed—for example, if it was delayed for the purpose of gathering additional evidence to justify the arrest or if the delay was motivated by ill will against the individual. *County of Riverside*, 500 U.S. at 57, 111 S.Ct. 1661.

**3.** The complaint alleges that by virtue of policy and custom the defendants do not "cause persons … *to appear before* a neutral judicial officer for a determination of probable cause." Complaint, ¶ 20. Although *County of Riverside* made reference to persons being "brought before" a judge for a hearing, *Gerstein* made clear that a defendant does not

have a right to be present at such a probable cause determination and that the determination may be made *ex parte* upon hearsay and written testimony. *Gerstein*, 420 U.S. at 120, 95 S.Ct. 854. *See also Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir.1994); *Strepka v. Miller*, 28 Fed.Appx. 823 (10th Cir.2001) (Unpublished; table and text in Westlaw). Thus, the fact that the defendants did not bring plaintiff before a judge for a probable cause finding does not show a constitutional violation. Viewed in the light most favorable to plaintiff, however, the complaint does allege that the defendants have a policy or custom of detaining individuals as to whom no timely probable cause determination has been made and/or "fail[ing] to effectuate such" determinations.

*v. Pugh.* See *Wishom v. Hill,* 2004 WL 303571 (D.Kan. Feb.13, 2004) (allegation that defendant sheriff detained plaintiff for six days without probable cause hearing stated claim for violation of Fourth Amendment rights).

■ Defendants contend the Sheriff fulfilled his constitutional duty by presenting plaintiff to a court on November 12, 2002, because the law "does not impose ... an obligation upon law enforcement to ensure [that] the judicial officer makes a sufficiently clear finding of probable cause." Def. Rep. at 2. Insofar as defendants are relying upon the scope of the Fourth Amendment to avoid liability, their argument misses the mark. "[T]he Fourth Amendment requires a judicial determination of probable cause *as a prerequisite to extended restraint of liberty following arrest.*" *Gerstein,* 420 U.S. at 114, 95 S.Ct. 854. It is the continued restraint of liberty without a probable cause finding that is objectively unreasonable and contrary to the Fourth Amendment. A law enforcement officer may thus violate the Fourth Amendment by continuing to detain an arrestee as to whom no probable cause has been found. Moreover, this is true regardless of whether the officer's intentions are good or bad, because the officer's subjective intentions play no role in assessing the reasonableness of a seizure under the Fourth Amendment. *Cf. Graham v. Connor,* 490 U.S. 386, 397–99, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ Defendants' reliance upon the specific role of law enforcement officers is in reality an argument that the Sheriff and his policies were not the proximate cause of this alleged violation because other persons—i.e., the Judge and the County Attorney—were responsible for seeing that a probable cause finding was made. *Cf. Scott v. Hern,* 216 F.3d 897 (10th Cir.2000) (to recover under § 1983, plaintiff must show that defendant's conduct was a proxi-

mate cause of the deprivation of rights). But this argument is unavailing under the standards of Rule 12(b)(6), which permit dismissal only if the plaintiff could prove no set of facts in support of the complaint that would entitle him to relief. Liberally construed, plaintiff has alleged that the unlawful detention resulted from the defendants' policy or custom. Plaintiff could conceivably produce facts to show that the defendants' policy or custom was a substantial factor in bringing about the alleged violation, even if the actions of others might also have contributed to the violation. In *Luck v. Rovenstine,* 168 F.3d 323, 326 (7th Cir.1999), the court addressed a somewhat similar argument as follows:

> Although he acknowledges his status as a county decision-maker and the jail's caretaker, Sheriff Rovenstine contends that he has no duty to ensure that detainees arrested without a warrant receive a probable cause hearing or gain release. Sheriff Rovenstine believes that someone else, perhaps the arresting officer or the prosecutor, is responsible for the period of confinement between a warrantless arrest and a judicial determination of probable cause. We find unconvincing the sheriff's attempt to shrug off his federal constitutional responsibilities toward detainees confined in the Kosciusko County Jail who have not yet had a probable cause hearing. In the somewhat different context of a claim for a substantive due process violation after probable cause has been established in an appropriate way, this court held in Armstrong that the sheriff's office could not abdicate its own responsibility for the fate of pretrial detainees. *See* 152 F.3d at 579. *See also Coleman v. Frantz,* 754 F.2d 719, 723 (7th Cir.1985). In the final analysis, the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is

he who is answerable for the legality of their custody.

The *Luck* court found a valid § 1983 action where the plaintiff claimed he was held without a probable cause finding due to the sheriff's policy of not monitoring the status of persons in his custody who had been arrested by other agencies. *Luck,* 168 F.3d at 326. *See also Armstrong v. Squadrito,* 152 F.3d 564, 579 (7th Cir.1998) ("Furthermore, jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty. * * * The jail acts at its own peril if it passes responsibility off on another party—whether the courts or the prosecutor. While the Constitution does not impose an affirmative duty on jail officials, it does hold them responsible when their failure to devise adequate policies results in an injury."); *Sivard v. Pulaski County,* 959 F.2d 662, 668 (7th Cir.1992) (plaintiff's allegation that he was held for 17 days without a probable cause finding was sufficient to state a claim against the sheriff). *Cf. Strepka v. Miller,* 28 Fed.Appx. 823 (10th Cir.2001) (Unpublished; table and text in Westlaw) (even under a liberal construction, plaintiff's complaint failed to allege that the named officers caused the delay in the probable cause determination). Although it is true that the custodian of an arrestee does not have authority to *force* a judge to make a determination of probable cause, the custodian does have the power to release an arrestee if no timely probable cause finding has been made. Moreover, a failure by a custodian to notify a court of the need for a probable cause determination or a failure to ascertain whether a judicial determination of probable cause has been made are situations in which a custodian's actions could be found to be a proximate cause of a *Gerstein* violation. And if such actions are the result of a municipal policy or custom, as is alleged

here, the municipality itself could be liable for having caused the violation.

In addition to their other arguments, defendants contend the allegations fail to state a claim against Sheriff Henderson in his individual capacity because no claim is made that he personally participated in the deprivation of plaintiff's rights. Liberally construed, however, the complaint alleges that Sheriff Henderson had final authority to determine the policies and procedures affecting detainees in the jail, that he had a policy or custom of not effectuating probable cause determinations for detainees who were arrested without a warrant, and that this policy or custom caused the deprivation of plaintiff's rights. Such allegations are sufficient to state a claim against Sheriff Henderson personally. *See.Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 127 (2nd Cir.2004) (personal involvement for individual liability can be shown if the defendant created a policy or custom under which the unconstitutional practices occurred). *See also Cozzo v. Tangipahoa Parish Council—President Government,* 279 F.3d 273, 289 (5th Cir.2002) (supervisory liability may exist without personal participation in the wrongful act if the supervisor implemented a constitutionally deficient policy that is the moving force behind the violation).

Lastly, defendants argue no Fourth Amendment violation is stated because plaintiff's continued detention after the November 12, 2002 hearing was "by order of the Reno County District Court." The "order" in question apparently refers to the allegation in the complaint that the Reno County District Judge set plaintiff's bond at $150,000 at the hearing on November 12, 2002, and that because plaintiff could not post bond, he remained in the defendants' custody. *Complaint,* ¶ 8–9. Defendants characterize this as a "facially

valid order of detention" and claim it shows the District Court "ordered plaintiff to remain under custody unless and until he could satisfy the bond requirements." First of all, beyond the fact that the Judge set a bond in the amount of $150,000, the particulars of what the judge ordered at the November 12th hearing are not contained in the complaint and are not now before the court.[4] Without some evidence, the court cannot presume to know what the court ordered, other than the fact that a bond was set. Secondly, even assuming there was an order by the Judge directing the defendants to take the plaintiff into their custody until he posted bond, such an order might be material to a question of the Sheriff's immunity, but such an order would not negate the existence of a Fourth Amendment violation arising from plaintiff's continued detention without a prompt judicial determination of probable cause.

Under the applicable standard of review, the court cannot say plaintiff could prove no set facts in support of his claim that would entitle him to relief. Accordingly, defendants' motion to dismiss for failure to state a claim must be denied.

C. *Qualified Immunity.* Even if the complaint states a claim for relief, defendants argue Sheriff Henderson is entitled to qualified immunity from suit because there was no clearly established law putting him on notice "that he should have released Plaintiff following the November 12, 2002, hearing at which [plaintiff's] continued detention was ordered."

■ Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly estab-

lished statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It leaves ample room for mistaken judgments, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The doctrine shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen,* —— U.S. ——, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004). It thus operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Because the focus is on whether the officer had fair notice, reasonableness is judged against the backdrop of the law at the time of the conduct. *Brosseau,* 125 S.Ct. at 599. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. *Id.*

■ "When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau,* 125 S.Ct. at 598. If they do, then the court must determine whether the law governing the officer's conduct was clearly established at the time of the alleged violation. *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th

---

4. The Arrest Report which the defendants attached to their memorandum includes the following notation on it: "11/12/02 Def appears, NTA upon filing of complaint, Bond set @ $150,000 w/s with no contact with victim SRB/ct." As noted above, the court will not consider the Arrest Report in ruling on this Rule 12(b)(6) motion. Even if it were to be considered, however, the court notes that the notations upon the Report are without foundation and are decidedly ambiguous.

Cir.1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Id.* The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Brosseau,* 125 S.Ct. at 599. If officers of reasonable competence could disagree on the issue, immunity should be recognized. *Malley,* 475 U.S. at 341, 106 S.Ct. 1092.

■ As noted above, the facts alleged in the complaint, taken as true and in the light most favorable to plaintiff, show a violation of the plaintiff's Fourth Amendment right not to be detained without a prompt judicial finding of probable cause. Plaintiff argues this right was clearly established because *Gerstein* and *County of Riverside* have long been understood to provide such a right. That is undoubtedly true as a general proposition, but the qualified immunity inquiry requires the court to examine the specific context of the defendant's conduct. *Brosseau,* 125 S.Ct. at 599. The defendants contend that a reasonable officer could have believed the detention to be lawful because—according to them—the District Judge ordered them to detain plaintiff until he met bond. As noted above, the problem with this argument is that the substance and circumstances of any order by the Judge are not before the court. The defendants are relying upon inferences and arguments that go beyond the mere allegation in the complaint that the Judge set a bond at the November 12th hearing. There is no evidence before the court concerning the ac-

tual order made by the Judge, or the procedures and practices of the Reno County District Court, or how such procedures might have affected what a reasonable officer in that situation could have believed to be lawful. For example, it is possible that the Judge issued an order of detention that was premised upon a belief or understanding that a complaint would be immediately filed and a judicial finding relating to probable cause would therefore be made within the 48–hour period contemplated by *County of Riverside. Cf.* K.S.A. § 22–2901(1) (person arrested without a warrant shall be taken without delay before a magistrate *and a complaint shall be filed forthwith* ) & § 22–2901(5) (if person cannot make an appearance bond, the magistrate shall commit him to jail *pending further proceedings* ); K.S.A. § 22–2302 (if magistrate finds probable cause from the complaint and/or affidavits, a warrant or summons shall be issued). At this point, the only fact before the court is that the Judge set a bond. That fact alone would not permit a reasonable officer to believe that plaintiff could be detained for several more days without a probable cause finding. Because the substance and circumstances of any order of detention by the Judge are not currently before this court, the defendants' qualified immunity argument is unavailing. Under the allegations in the complaint, the court cannot say plaintiff would be unable to prove any set of facts that could overcome the Sheriff's asserted qualified immunity. *See Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004) (asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment; a district court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his·claim which would entitle him to relief).

D. *Quasi–Judicial Immunity.* Defendants argue the Judge's order at the November 12th hearing also entitles them to "quasi-judicial" immunity insofar as they merely followed the Judge's order. *See Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir.1990) (officials charged with the duty of executing a facially valid court order enjoy absolute immunity from damages in a suit challenging conduct prescribed by that order). Even assuming quasi-judicial immunity would be available to a law enforcement officer on this type of claim, defendants' argument fails for the same reasons noted above relating to qualified immunity. At this point, the substance and circumstances of any order by the Reno County District Court are not before the court. *Cf. Bowlin v. Mease,* 74 F.3d 1243 (Table, text in Westlaw) (unpublished), 1996 WL 26612 (8th Cir., Jan.25, 1996) (sheriff entitled to quasi-judicial immunity where, notwithstanding absence of probable cause finding, judge ordered plaintiff remanded to sheriff's custody until he met bond).

## V. Conclusion.

Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 11) is DENIED.